UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ROSE DONAHUE and KEVIN DONAHUE,

              Plaintiffs,        Civil No. 13-5737 (NLH/KMW)

    v.

                                                 **OPINION**

TARGET CORPORATION,

              Defendant.
_____

**APPEARANCES:**

PERSKIE FENDT & CANNADAY, P.C.
By: Robert T. Fendt, Esq.
450 Tilton Road, Suite 260
Northfield, New Jersey 08225
        *Counsel for Plaintiffs*

KANTROWITZ & PHILLIPPI, LLC
By: Polly N. Phillippi, Esq.
1239 Parkway Avenue – Suite 101
Ewing, New Jersey 08628
        *Counsel for Defendant*

**HILLMAN, District Judge**

     This is a diversity premises liability suit.[1] Plaintiff Rose Donahue asserts that, while shopping at Defendant's Target store in Mays Landing, New Jersey, she was injured as she removed a heavy box from a waist-high shelf. Presently before the Court is Target's Motion for Summary Judgment. For the reasons set forth

---

[1] The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

1

below, the motion will be denied.

# I.

Plaintiff Donahue went to her local Target store on September 25, 2011, around mid-day, to purchase a bookcase that she had seen advertised in Target's circular. (R. Donahue Dep. p. 32-33, 38) The bookcase was packed disassembled in one rectangular box; the dimensions of which were 12 1/8 inches wide, 39 1/2 inches high, and 7 inches deep. (Def's Statement of Undisputed Facts, "SUF", ¶ 6) The box and disassembled bookcase together weighed 55.4 pounds. (Id.)

The box was displayed standing upright on a shelf that was approximately four feet off the ground, with other merchandise on a shelf below it. (Def's SUF ¶ 4-5; Def's Ex. C) Two metal "safety arms" extended out on either side of the box and bent inward at approximately the middle of the upright box. (Def's SUF ¶ 5, Def's Ex. C)

Donahue testified that she navigated her shopping cart to the furniture section of the store, and found the advertised "5-shelf bookcase." (R. Donahue Dep. p. 40; Def's Ex. C) She further testified that she assumed the box would not be heavy because the $26.00 price suggested to her that the bookcase was likely made of "particle board." (Id. p. 46)

At her deposition, Donahue described what happened:

> The shelf was about waist height and . . . I reached in and I just picked it straight up. The silver bar was about to the middle of the box . . . so I knew I had to get it over that so I just picked it straight up [over my head]. . . . [Then] the contents of the box . . . shifted to the right and [the box] slipped right through my hands and the box came down on an angle, hit my [right] cheekbone, . . . [t]hen my left shoulder, . . . [and] left forearm. . . . [T]hen I, like caught it with my legs and just heaved it into my [shopping cart] that was to my right side there.

(R. Donahue Dep. p. 48-49, 51)

The box undisputedly was marked with two yellow "Team Lift" labels which depict two people lifting a box together. (Def's SUF ¶ 9-10) The label reads: "FOR YOUR SAFETY . . . This merchandise is a TEAM LIFT item. It is either too heavy or too bulky for one person alone to handle safely. Please call guest service for assistance." (Def's SUF ¶ 11) Donahue testified that she did not see the yellow stickers. (R. Donahue Dep. p. 45)

Donahue further testified:

> Q: . . . Why didn't you call and ask for assistance to lift the box off the shelf?
>
> A: Well, because that it was on the [waist-high] shelf and that it was $26, it was a small [bookcase] and that, you know, anybody could just reach in and pick it up.
>
> Q. Did you attempt before you went in to reach to pick it up to find somebody to help you?
>
> A. No.
>
> Q. Why not?
>
> A. I just thought-- I always thought it was, like a

3

self-service store and that like Walmart or Kmart you
just went in and helped yourself.  If I knew . . . it
was too heavy I would always bring my husband.  I
didn't think I required him to pick up a little shelf
for me.

(R. Donahue Dep. p. 51-52)

After getting the box into the cart, Donahue shopped for approximately 15 minutes before checking out. (R. Donahue Dep. p. 55) "[N]ear the end" of that time, Donahue's "neck really started to bother" her and she "felt, like pressure on top of [her] head." (R. Donahue Dep. p. 55)

In the parking lot, Donahue managed to "slide" the box from the shopping cart into the hatch-back of her Honda Pilot without having to lift the box. (R. Donahue Dep. p. 59)

Upon returning home, Donahue explained to her husband what happened.  He advised Donahue to immediately return to the store to report the incident. (R. Donahue Dep. p. 61)[2]  Donahue did so, and completed Target's standard "LOD Investigation Report" with the assistance of a Target employee. (Id. at p. 61-62; Def's Ex. B) The report states in relevant part, "the guest didn't realize how heavy the item was until she started taking it off the shelf." (Def's Ex. B)

Later that same evening, Donahue went to an urgent care

---

[2] Donahue's husband took the bookcase out of the car.  Upon lifting it, he remarked, "'holy cow, this is 60 or 70 pounds' and then he kind of like, laughed." (R. Donahue Dep. p. 70)

4

facility for her injuries. (Def's Ex. F)

According to Plaintiff's opposition brief, as a result of the incident, Donahue has had three separate surgeries yet still suffers from lasting problems. Donahue testified that she has "a little bit [of weakness] in [her] left [arm]" and her right arm is "completely numb." (R. Donahue Dep. p. 13) She also has "tightness" in one hand and "a lot of pain in [her] elbow." (R. Donahue Dep. p. 13)

Before the incident, Donahue worked as a cocktail waitress at an Atlantic City casino, carrying drinks on a tray throughout the gaming floor. (R. Donahue Dep. p. 9, 12) Since her injury, she has switched to bartending. (Id. at 13)

The Complaint asserts two claims: negligence and loss of consortium under New Jersey common law.

## II.

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that

a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); *see also Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an

absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.")(citing *Celotex*, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s.]'" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Sniezek*, 418 F. App'x 56, 58 (3d Cir. 2011)(citing *Celotex*, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 257.

## III.

Target moves for summary judgment arguing that the record evidence cannot support a finding that (A) a dangerous condition existed; and (B) Target's asserted negligence was the cause-in-fact of Donahue's injuries. Target also argues that (C) any dangerous

7

condition was open and obvious. All three arguments fail.

**A.**

Donahue's theory of her case is that the placement of the box on the shelf, combined with inadequate warnings, resulted in an unreasonably dangerous condition.

"Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation. The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003)(internal citations omitted).

When, as in this case, an injury occurs within the context of a defendant's self-service mode of operation, "[t]he plaintiff is entitled to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did 'all that a reasonably prudent [business owner] would do in light of the risk of injury the operation entailed.'" *Nisivoccia*, 175 N.J. at 564-65 (quoting *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 429 (1966)); *see also O'Shea v. K.Mart Corp.*, 304 N.J. Super. 489, 495 (App. Div. 1997)("in self-service stores . . . the customer is expected and indeed invited to handle

and examine articles of merchandise displayed or stacked in the store . . . . The defendant having established a business of this nature is under a duty to take reasonable measures to guard against injuries to customers due to such fallings of stacked merchandise.")(internal citation and quotation omitted); *see generally Katsaros v. Target Corp.*, 2015 U.S. Dist. LEXIS 12219 at *5-6 (D.N.J. Feb. 3, 2015)(concluding that the mode of operation rule applied to a slip and fall occurring in a Target store).

    Application of this burden shifting doctrine is significant in the context of the instant motion. Target argues that Plaintiff's evidence is insufficient to establish negligence, but because the mode of operation doctrine applies, it is Target which must put forth evidence that it was not negligent. *See Nisivoccia*, 175 N.J. at 565 ("absent an explanation by defendants, a jury could find from the condition of the premises and the nature of the business that defendants did not exercise due care in operating the establishment, and that said negligent operation was the proximate cause of the injuries.")(internal citation and quotation omitted); *Katsaros*, 2015 U.S. Dist. LEXIS 12219 at *6 ("Defendant has not sufficiently proven at this point that it took prudent and reasonable steps to avoid the potential hazard.").

    In this regard, Target argues that it fulfilled its duty of care by placing the "team lift" stickers on the box. However,

issues of disputed material fact preclude granting summary judgment to Target. As demonstrated by the picture of the box at Def's Ex. C, the one sticker that may have been visible while the box was resting vertically on the shelf is: (a) relatively small compared to the large size of the box; (b) located inconspicuously in the right bottom corner of the box, several inches below the picture of the bookcase; and (c) situated in between two other similarly-sized logos and the item's barcode.

Moreover, Donahue's expert opines that "the warning labels were small and on a cluttered box with many other labels, graphics and designs intended to attract the attention of shoppers. It was not reasonable for Target to rely on customers either reading all labels on the box or only this warning label before touching this box." (Pl's Ex. D).

A reasonable factfinder could conclude that the merchandise display, which was created for customers' self-service, was unsafe insofar as it was placed too high up for a 55 pound, bulky box. The factfinder could further conclude that Target's "team lift" stickers were insufficient to fulfill its duty of care to Donahue under the circumstances.

**B.**

Target also argues that Donahue cannot prove proximate cause because, Target reasons, Donahue testified that she did not see any

warning stickers, therefore Target's asserted inadequate warning could not have been the cause of Donahue's injuries. According to Target, "[r]egardless of how big or small the text, there is no evidence this plaintiff would have been warned and heeded the warning to avoid the danger." (Reply Brief, p. 6)

The Court disagrees with Target's analysis because the analysis is inconsistent with: (a) the application of the mode of operation doctrine, *Nisivoccia*, 175 N.J. at 565 ("a jury could find from the condition of the premises and the nature of the business that defendants did not exercise due care in operating the establishment, *and that said negligent operation was the proximate cause of the injuries*.")(emphasis added); and (b) the Court's obligation to view the record evidence in the light most favorable to Donahue.

A jury must decide the issues of material fact concerning the proximate cause of Donahue's injuries.

### c.

Lastly, issues of material fact preclude summary judgment as to whether the alleged dangerous condition was open and obvious. A reasonable factfinder could find reasonable Donahue's explanation that she did not expect a $26 bookcase at a self-service big box store such as Target to weigh 55 pounds.

Indeed, Donahue's husband's remark upon lifting the bookcase

out of Donahue's car-- "'holy cow, this is 60 or 70 pounds'" (R. Donahue Dep. p. 70)-- supports an inference that the weight of the bookcase was the opposite of open and obvious.

**IV.**

For the reasons stated above, Target's Motion for Summary Judgment will be denied.  An appropriate order accompanies this opinion.


Dated: April 7, 2017                    __s/ Noel L. Hillman___
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.